STATE OF MISSOURI, Respondent, v. ISAAC T. COOK, Appellant.

St. Louis Court of Appeals, May 3, 1910.

1. CRIMES AND PUNISHMENTS: Failing to Provide Fire Escapes: "Manager" of Building not Necessarily "Keeper" of it. The manager of a building is not necessarily a keeper of it, since one might be styled "manager" if his task in connection with an office building was to look after letting the rooms to tenants and collecting rents, while another person was "keeper," had the custody of the building and was charged with looking after its heating, lighting, water supply, toilet arrangements, improvements, repairs and the regulation of its maintenance generally.

2. ———: ———: ———: Statutes Construed. Session Acts 1901, p. 219, section 1, requires the owner, proprietor, lessee, or "keeper" of office buildings, etc., more than three stories high, to provide fire escapes. Section 5 makes the owner, proprietor, lessee, or "manager" of a building, required to be equipped with fire escapes, who neglects for sixty days after the act becomes effective to comply with the act, guilty of a misdemeanor. Acts 1903, pp. 251, 252, repealed the first three sections of the act and enacted new sections in their place, but section 1 of the act as amended requires the owner, proprietor, lessee or keeper of such buildings to provide escapes as in the original act. Section 2 provides that, if a fire escape is found upon inspection to be unsafe, the owner, proprietor, lessee, or keeper shall repair it, and section 5 remains unchanged. *Held*, the words "manager of a building," do not necessarily mean the same as "keeper of a building," or denote any particular duties in relation to the building, and one charged ·as "manager" of a building with violating the act should not be convicted, in the absence of evidence showing his duties made him a "keeper" of the building and required by the statute to provide fire escapes.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Wilson A. Taylor,* Judge.

REVERSED AND REMANDED.

*T. J. Rowe, Thos. J. Rowe, Jr.,* and *Henry Rowe* for appellant.

The information fails to allege facts sufficient to constitute any offense against the laws of the State of Missouri, in this that it fails to allege that defendant was the owner, proprietor, lessee or keeper of the building. Yall v. Snow, 100 S. W. 1; Johnson v. Snow, 102 Mo. App. 233.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for respondent.

GOODE, J.—This defendant appeals from a conviction on an information charging him with willfully and unlawfully neglecting and refusing to provide a steel fire escape attached to the exterior of the Chem-

ical Building on the northeast corner of Eighth and
Olive streets in St. Louis, a building sixteen stories
in height and used for office purposes. This building
was erected eighteen years before the filing of the in-
formation; had been used for an office and business
building during working hours, no one being allowed
in it after eleven o'clock in the evening except the night
watchman. The point made for reversal is that de-
fendant is not within the scope of the act on which the
information is founded, because he did not have con-
trol of the building as owner, proprietor, lessee or
keeper. The information charges defendant with hav-
ing been manager of the building March 10, 1908, and
that prior to said date the building was used and oc-
cupied by defendant as manager as an office building;
that it was his duty as manager to provide one or more
fire escapes attached to the exterior of the building,
and on said day, disregarding his duty, he willfully
and unlawfully neglected and refused to provide a fire
escape attached to the exterior of the building as pro-
vided by law, contrary to the statute in such case made
and provided and against the peace and dignity of the
State. The evidence shows defendant was manager of
the building at the date laid in the information, but
shows nothing whatever regarding his duties as man-
ager or the extent of his authority, or whether he had
control of the building. The determination of the point
raised turns on the act in relation to fire escapes
of 1901, as amended by the act of 1903. The first section
of the first act made it the duty of the owner, proprietor,
lessee or keeper of buildings of various descriptions, in-
cluding office buildings and those used as places of bus-
iness and more than three stories in height, to provide
such structures with fire escapes attached to the ex-
terior of the buildings. This is all we need to notice
of said section and we call attention to the fact that
the word "manager" was not used in it. But in the

148 App—25

fifth section of the act, a misdemeanor was created for a refusal to comply with its provisions. That section said the owner, proprietor, lessee or manager of a building which, under the terms of the act was required to have one or more fire escapes, who should neglect for a period of sixty days after the law took effect, to comply with its provisions, should be deemed guilty of a misdemeanor and on conviction should be punished in the manner described. [Session Acts 1901, p. 219.] It should be observed that in section 5, the word "manager" was substituted for the word "keeper" used in section 1; that is to say, section one imposed the duty of providing fire escapes on the owner, proprietor, lessee or *keeper* of a building, whereas section five required the owner, proprietor, lessee or *manager* to provide the fire escape within sixty days after the act took effect, on pain of being guilty of a misdemeanor. It is manifest the word "manager" is used in section 5 in the sense of "keeper." In 1903 the first three sections of the Act of 1901 were repealed and new sections enacted in lieu of them. The change in the first section seems to have been only the insertion of the words "tenement house" among the words describing the character of the buildings that must be provided with fire escapes. Said section as amended still imposed the duty of providing the escapes on the owner, proprietor, lessee or keeper. Section 2 of the amended act differs materially from section 2 of the original act, but all we need call attention to in the section is that it provided if a fire escape attached to a building should be found on inspection by the commissioner, superintendent of inspection of buildings or the chief of the fire department of the city, to be in an unsafe condition, the owner, proprietor, lessee or keeper should forthwith rebuild or repair the same or place it in a safe condition on written notice from such official. The word "keeper" is again used in that section. Section three of the amendment does not bear upon the present case. The amended

act made no change in section 5 of the original act, which provided the owner, proprietor, lessee or *manager* should be guilty of a misdemeanor if he neglected or refused for a period of sixty days after the law took effect, to comply with its provisions. The delinquency laid in the information was committed after the passage of the amendatory act and as said in March, 1908. The clear purpose of the act as amended and as it was originally, was to place the duty of providing fire escapes and of rebuilding, repairing and replacing them, on the owners, lessees, proprietors or keepers of the buildings designated. A manager could not be convicted under section 5 for failure to repair or rebuild or replace a fire escape as required in section 2 of the amendment, because section 5 creates a misdemeanor on the part of the manager, owner, proprietor or lessee only for failure to provide fire escapes within sixty days after the original act took effect; that is, to provide them in the first instance; not replace or repair them. This defendant was not manager sixty days after the act took effect and so far as appears had no relation at that time to the building which would put upon him the duty to provide a fire escape. If in any view of the law he is answerable criminally under section five, it is because he became manager later of a building which had no exterior fire escape, but which the law required to have one, and defendant, after becoming manager, omitted to provide it. That construction of the law looks extreme, but we rest our decision on another phase of the case. As said, the word "manager" must have been used in the sense of "keeper," for on the keeper of buildings the statutory duty was imposed. Now the manager of a building is not necessarily a keeper of it. We know of no technical or settled meaning of the phrase, manager of a building, which imports the same duties as "keeper," or even signifies in a definite way any duty pertaining to the position of manager. A man might be styled "manager" if his task in connection

with a large office building was to look after letting the rooms to tenants and collecting rents, while another person was keeper and had the custody of the building, was charged with looking after its heating, lighting, water supply, toilet arrangements, improvements, repairs, and generally regulating its maintenance. So, in the absence of any proof of what defendant's duties were, he was not shown to have become manager in the sense that he was a keeper of the building and required by the statute to provide fire escapes.

The judgment is reversed and the cause remanded. All concur.